UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DAWN THOMPSON, individually and on behalf of herself and all others similarly situated, | ) ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. 04-10778-JLT |
| v. | ) ) ) | |
| MICRON TECHNOLOGY, INC., MICRON SEMICONDUCTOR PRODUCTS, INC., CRUCIAL TECHNOLOGY, INC., NANYA TECHNOLOGY CORPORATION, NANYA TECHNOLOGY CORPORATION USA, INFINEON TECHNOLOGIES AG, INFINEON TECHNOLOGIES NORTH AMERICA CORPORATION, MOSEL VITELIC CORPORATION, MOSEL VITELIC CORPORATION USA, WINBOND ELECTRONICS CORPORATION, WINBOND ELECTRONICS CORPORATION AMERICA, NEC ELECTRONICS AMERICA, INC., HYNIX SEMICONDUCTOR INC., HYNIX SEMICONDUCTOR AMERICA, INC., SAMSUNG ELECTRONICS CO., LTD. SAMSUNG SEMICONDUCTOR, INC., ELPIDA MEMORY, INC., and ELPIDA MEMORY USA, INC. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM  IN SUPPORT OF**
**PLAINTIFF'S MOTION TO REMAND**

**INTRODUCTION**

Plaintiff Dawn Thompson ("Plaintiff"), by and through her undersigned counsel of

record, hereby submits this memorandum in support of her Motion to Remand this case to the

00002454.WPD ; 1

Essex Superior Court Department of the Trial Court of the Commonwealth of Massachusetts, where jurisdiction is proper. The Motion to Remand was necessitated by the improper removal of this action by defendants, Micron Technology, Inc., Micron Semiconductor Products, Inc., Crucial Technology, Nanya Technology Corporation USA, Infineon Technologies North America Corporation, Mosel Vitelic Corporation (USA), Winbond Electronics Corporation America, NEC Electronics America, Inc., Hynix Semiconductor America, Inc., Samsung Semiconductor, Inc., and Elpida Memory (USA), Inc. (collectively, "Defendants").

Plaintiff, a Massachusetts consumer who has been overcharged as a result of Defendants' price-fixing and market allocation conspiracy for Dynamic Random Access Memory chips or modules ("DRAM"), filed this class action lawsuit in the Essex Superior Court Department. Plaintiff seeks relief from Defendants for unjust enrichment (Complaint, Count I). The Complaint states that "[n]either the Plaintiff nor any member of the Class has damages exceeding $75,000 each." (Complaint, ¶ 9).

Defendants assert that this Court has diversity jurisdiction, pursuant to 28 U.S.C. §1332, (Notice of Removal, ¶ 34). Defendants, in reliance upon the minority viewpoint adopted in a few foreign courts, assert that this action satisfies the jurisdictional amount sought by any one plaintiff, because the amount in controversy should be considered as a whole and not divided pro-rata by the class members.

Contrary to Defendants' contention, as made clear by this Court and other decisions from within the First Circuit, the Plaintiff's unjust enrichment claim does not permit aggregation of the amounts sought by the Plaintiff and the individual class members are not uniting to enforce as single title or right in which they have a "common and undivided" interest. Therefore, the amount in controversy requirement for diversity jurisdiction is not satisfied. Under these

circumstances, the Court should grant Plaintiff's Motion to Remand.

## FACTS ALLEGED IN CLASS ACTION COMPLAINT

On March 8, 2004, Plaintiff Dawn Thompson filed this action in the Essex Superior

Court on behalf of herself and a class of all natural persons who within the Commonwealth of

Massachusetts purchased any consumer product containing DRAM manufactured or sold by any

of the Defendants. (Complaint, ¶ 58).  DRAM are high density, low-cost-per bit, random access

memory components that are used in personal computers, printers, digital cameras, wireless

telephones and other electronic devices. (Complaint, ¶ 69).  They reportedly sell for

approximately $3.00 per chip. (Complaint, ¶ 79).  As alleged in the Complaint, beginning no

later than November, 2001 and continuing until at least June, 2002, Defendants entered into a

conspiracy with the deliberate purpose and effect of fixing, raising, maintaining and stabilizing

the prices of, and allocating the markets for DRAM. (Complaint, ¶¶ 1 & 84).  As a result of

Defendants' unlawful conduct, Plaintiff and other Massachusetts consumers paid artificially

inflated prices for products containing DRAM. (Complaint, ¶¶ 5 & 86).  Plaintiff believes that

the total number of Class members is in the millions. (Complaint, ¶ 60).

On April 16, 2004, Defendants filed a Notice of Removal to this Court, asserting

jurisdiction under 28 U.S.C. § 1332 (diversity).

## ARGUMENT

### A.    Defendants Have The Burden Of Proof To Establish Removal Jurisdiction

A civil action is removable only if the plaintiff could have originally brought the action

in federal court. *See* 28 U.S.C. § 1441(a).  "If at any time before final judgment it appears that

the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. §

1447(c).  Defendants, having removed this case from state court, have the burden of

demonstrating that this Court has subject matter jurisdiction, whether by virtue of federal

question jurisdiction, 28 U.S.C.§ 1331, or diversity jurisdiction, 28 U.S.C. § 1332.  *Danca v.*

*Private Health Care Systems, Inc.,* 185 F.3d 1, 4 (1st Cir. 1999); *Gattegno v. Sprint Corporation,*

297 F. Supp.2d 372 (D.Mass. 2003);; *Ciardi v. F. Hoffman-La Roche, Ltd.,* 2000 WL 159320 (D.

Mass., February 7, 2000) (Copy attached as Exhibit A); *Williams v. America Online, Inc.,* No.

00-10694-GAO (D. Mass., August 10, 2000) (Copy attached as Exhibit B).  It is axiomatic that

the removal statute be strictly construed. *Shamrock Oil Corp. v. Sheets*, 313 U.S. 100, 108

(1941).  Any doubt as to the existence of federal jurisdiction must be resolved in favor of state

court jurisdiction. *See, e.g., Danca*,  185 F.3d at 4; *Bally v. National Collegiate Athletic*

*Association*, 707 F. Supp. 57, 58 (D. Mass. 1988).  In this case, Defendants have thoroughly

failed to establish the necessary predicates to federal jurisdiction.

> **B.     The Individual Plaintiff's Claims Are Less Than $75,000. and Aggregation of
> Damages is Inappropriate in This Action**

Defendants do not dispute that the individual damages sustained by the Plaintiff and class

members are below $75,000.  Rather, they contend that the amount in controversy for diversity

jurisdiction is satisfied because "the value of the fund that Plaintiff seeks to create through

disgorgement of the proceeds of this alleged conspiracy would, thus, exceed $75,000."  (Notice

of Removal, ¶ 40).  However, as discussed below, the majority view, which is followed by courts

in the First Circuit and which has been applied by this Court, is that aggregation is inappropriate,

and that disgorgement claims do not lead to aggregation and does not establish a single title or

right in which putative class members have a common and undivided interest.  *Gattegno,* 297 F.

Supp.2d at 378; *Ciardi,* 2000 WL 159320 at *2; *Germano v. Microsoft Corporation*,  No. 00-

10172-JLT (D.Mass. May 16, 2000) (Tauro, J.) (Copy of Remand Order attached as Exhibit C);

*Gibson v. Chrysler,Corp.,* 261 F.3d 927 (9th Cir. 2001); *McCoy v. Erie Ins. Co.,* 147 F. Supp. 2d

481 (S.D.W. Va. 2001); *Pierson v. Source Perrier, S.A.,* 848 F. Supp. 1186 (E.D. Pa. 1994); *In

re Ford Motor Co./Citibank (South Dakota), N.A.,* 264 F.3d 952, 961-962 (9th Cir. 2001);

*Morrison v. Allstate Indemnity Co.,* 228 F.3d 1255, 1262 (11th Cir. 2000); *Gilman v. BHC

Securities, Inc.,* 104 F.3d 1418 (2d Cir. 1997).

In *Gattegno*, a statewide class action on behalf of Massachusetts wireless telephone

customers, the defendants advanced the identical argument asserted in this case; that plaintiff's

unjust enrichment claim creates a common fund and the entire amount of the fund and not what

each class member's share will eventually be, should determine the amount in controversy. 297

F. Supp.2d at 378.   Judge Keeton, in remanding the action to Suffolk Superior Court and

following the majority viewpoint, found that "[d]efendants misstate the law." *Id.*  "The focus

should not be on the type of relief requested, but rather on the nature and value of the right

asserted." *Id.*, citing *In re Ford Motor Co.,* 264 F. 3d at 960; *Pierson,* 848 F. Supp. at 1188.

"Thus, the issue turns not on whether the plaintiffs seek a 'common fund,' but on whether

plaintiffs bring the case based in individual claims or in an indivisible, common claim."

*Gattegno*, 297 F. Supp.2d at 378.  Judge Keeton held that the proposed class did have specific

claims for individual payments and that the class claims could not be aggregated to meet the

required amount-in-controversy. *Id.*

Similarly, in *Germano*, an indirect purchaser action on behalf of consumers who paid

inflated prices for their Windows operating systems resulting from defendant's unlawful acts and

practices, this Court denied defendant's arguments that the jurisdictional amount was satisfied

because its costs to comply with equitable relief in the form of restitution and disgorgement were

greater than $75,000.  This Court remanded the statewide consumer class action to Suffolk

Superior Court. In *Germano*, Microsoft [1] argued that the court should look to the "defendant's view" in determining the amount in controversy and that it would cost approximately $58.5 million to comply with the relief requested by plaintiff and the putative class. This Court followed the overwhelming authority in Massachusetts that aggregation is inappropriate and remanded the case to Middlesex Superior Court.

The Supreme Court has also repeatedly held, in the class action context, that the claims of class members cannot be aggregated for the purpose of satisfying the jurisdictional amount -- the "amount in controversy" requirement must be individually satisfied for each member of the plaintiff class. *Snyder v. Harris*, 394 U.S. 332, 336-337, 89 S.Ct. 1053, 1057, 22 L.Ed.2d 319 (1969); *Zahn v. International Paper Co.*, 414 U.S. 291, 300-301, 94 S.Ct. 505, 511-512, 38 L.Ed.2d 511 (1973). *See also Ciardi*, 2000 WL 159320 at *2 (Massachusetts law does not permit defendants to evade the anti-aggregation rule); *Hairston v. Home Loan and Investment Bank*, 814 F. Supp. 180, 181 & n.1 (D.Mass. 1993) (claims of each class member must be greater than $50,000; declining to adopt "defendants' viewpoint" rule); *Williams*, No. 00-10694-GAO at *2 (rule against aggregation requires valuation of injunctive relief be made individually for each plaintiff); *Spielman v. Genzyme Corporation*, 193 F.R.D. 19, 22 (2000) (attorneys' fees must be divided pro rata among all members of the putative class); *Bassett v. Toyota Motor Credit Corp.*, 818 F. Supp. 1462, 1465-68 (S.D.Ala. 1993) (in class action arising from force-placed insurance coverage, court refused to aggregate damages claims and rejected "defendants' viewpoint" analysis); *Averdick v. Republic Financial Services, Inc.*, 803 F. Supp. 37, 43-44 (E.D.Ky. 1992)

---

[1] It is worth noting that Microsoft's counsel also serve as counsel for a majority of the Defendants in this case. A copy of Microsoft's Opposition to Plaintiff's Motion to Remand in *Germano* is attached as Exhibit D.

00002454.WPD ; 1                                                    6

(declining to aggregate claims of class members or to adopt "defendants' viewpoint").  These

principles have been applied in a case involving price-fixing claims under state law, like the

instant case.  *See Rosack v. Volvo of America Corp.*, 421 F. Supp. 933 (N.D.Cal. 1976).

    In an attempt to get around the non-aggregation rule, Defendants (incorrectly) rely upon

a narrow exception that allows for aggregation of class claims when members have a common

undivided interest and a single title or right involved.  However, this exception can only be

advanced in a very narrow set of circumstances.  *See Morrison*, 228 F.3d at 1262 ("the presence

of a 'common and undivided interest' is rather uncommon, existing only when the defendant

owes an obligation to the group of plaintiffs as a group and not to the individuals severally.");

*Bishop v. General Motors Corp.*, 925 F. Supp. 294, 298 (D.N.J. 1996) (The "paradigm cases"

allowing aggregation of claims "are those which involve a single individual res, such as an

estate, a piece of property (the classic example) or an insurance policy.  These are matters that

cannot be adjudicated without implicating the rights of everyone involved with the res.").

    Following the Supreme Court's directive to strictly construe allegations of the

jurisdictional amount in controversy, courts allow aggregation only where there is not only a

common fund but where the plaintiffs have a joint interest in such a fund.  *Morrison*, 228 F.3d at

1263. Obviously, most class actions seek the creation of some type of common fund, but that

does not necessarily translate into a common and undivided interest:

> Such a "fund" is created to facilitate the litigation process in
> virtually every class action, and has nothing necessarily to do with
> whether the plaintiffs shared a pre-existing (pre-litigation) interest
> in the subject of the litigation.
>
> *            *            *
>
> It is of course commonplace to collect class action damages
> wholesale, put the proceeds in a single fund, and distribute the

> proceeds retail upon a showing of specific entitlement in
> accordance with the judgment.

*Gilman*, 104 F.3d at 1427-28. Further, in order to determine whether there is a common and undivided interest in a common fund, courts look to the nature of the right asserted, not that of the relief requested and are not concerned with "whether successful vindication of the right will lead to a single pool of money that will be allocated among the plaintiffs." *Gilman*, 104 F.3d at 1427; *Gattegno*, 297 F. Supp. at 378; *Morrison*, 228 F.3d at 1264.

*Berman v. Narragansett Racing Association*, 414 F.2d 311 (1st Cir. 1969), cited by Defendants, is factually distinct from this case and actually serves to illustrate why the common and undivided interest exception does not apply here. In *Berman*, no individual plaintiff horse owner, in a suit against certain racetracks, could claim any specific entitlement to any portion of the disputed purse money, because the agreements in question only obligated the tracks to pay a certain percentage of the funds, in the aggregate, to the group of pursewinners. *Id*. at 315. Indeed, the Court in *Berman* analogized the situation before it to "a shareholder's derivative action." *Id*.[2] The situation of the Plaintiff and class members here is far more analogous to that of the plaintiff in *Gattegno* or the plaintiffs in *Morrison* or *Gilman* than to the group of horse owners in *Berman*.

In the case at bar, the plaintiff and each individual class member did not make overpayments as a group, nor do they seek disgorgement of any specific, identifiable fund; rather, each member made separate distinct and individual purchases of personal computers, printers, digital cameras, wireless telephones and other electronic devices which were sold with DRAM chips or modules. Each class member can only recover to the extent of his or her

---

[2] *See Gilman*, 104 F.3d at 1427, distinguishing *Berman* on the same basis.

overpayment. *Campbell v. General Motors Corp.*; 19 F. Supp.2d. 1260, 1268 (N.D.Ala. 1998)("unjust enrichment remedies do not provide a generalized recovery of a fixed fund for the class[; e]ach plaintiff is entitled to defendants' profits which resulted from the wrongdoing to that particular plaintiff."); *Dixon v. Ford Motor Credit Co.*, 1998 WL 440304 at *3 (E.D.La. July 31, 1998) ("While the damages are admittedly based on the defendants' profits, and not the plaintiffs' harm, each recovery is an individual right and constitutes an individual interest"). The claims of each class member represented here are based on individual purchases of consumer products containing DRAM chips or modules, and each class member could have brought his or her own separate action against the Defendant. *See Ford Motor Co.*, 264 F.3d at 960, 962. The class members paid for their consumer products individually, and not as a group. *Id.* at 962. And prior to this litigation, the class members, unlike the horse owners in *Berman*, shared no common interest in any fund. *Id.*

Defendants reliance upon *Aetna U.S. Healthcare, Inc. v. Aktiengesellschaft*, 48 F. Supp.2d 37 (D.D.C. 1999) and other foreign cases that follow the minority viewpoint is unconvincing. The *Aetna U.S. Healthcare, Inc.* case is distinguishable because the plaintiffs were seeking disgorgement of a specific, identifiable fund, that is, an annual payment of $40 million by defendant Hoechst allegedly made to induce defendant Andrx to agree not to market its product in the United States. *Aetna U.S. Healthcare, Inc.*, 48 F. Supp.2d at 38-43. Further, Defendants fail to cite the subsequent decision of the United States District Court for the District of Kansas, involving identical claims, which rejected the District of Columbia Court's decision. *Aetna U.S. Healthcare, Inc. v. Aktiengesellschaft*, 54 F. Supp. 2d 1042 (D. Kan. 1999). The District of Kansas held that because the disgorgement count was based on **individual overpayment claims**, and not upon a collective claim, the damages could not be aggregated for

purposes of satisfying the jurisdictional amount. *Id.* at 1049 (emphasis added). The court

reasoned as follows:

> The court respectfully declines to follow those holdings which
> have found that plaintiffs assert a common and undivided interest.
> The fact that plaintiffs seek disgorgement of the entire fund is not
> dispositive of the issue. 'The proper focus should not be upon the
> type of relief that plaintiffs seek, but rather upon the nature and
> value of the rights that they have asserted.' (citations omitted)....the
> District of Columbia court determined that plaintiffs' claim for
> disgorgement involved a common and undivided interest because
> plaintiffs requested disgorgement of the entire unjust enrichment
> to defendants -- the stipulation funds. *Id.* at *3. The court focused
> on the fact that plaintiffs' disgorgement claim only alleged
> wrongful conduct by defendants; the claim did not tie this conduct
> to individual rights.

*Id.*

"[D]espite its cloak of collectiveness, the plaintiff's disgorgement was not aggregable for

jurisdictional purposes because 'the claim remains one on behalf of separate individuals for

damage suffered by each due to the alleged conduct of defendant.'" *Ford Motor Co.*, 264 F.3d at

961 quoting *Gilman*, 104 F.3d at 1427. Clearly, the unjust enrichment claim against Defendants

is based upon the individual claims of Plaintiff and the class members and aggregation of

damages to meet the jurisdictional amount is not warranted.

C.    **The Amount in Controversy Must Be Viewed From the Plaintiff's Standpoint**

Defendants also suggest that diversity jurisdiction can be obtained by focusing on the

total cost of the disgorgement of profits, instead of the value of such relief to each class member.

(Notice of Removal ¶38). However, this argument puts the cart before the horse and has been

rejected in this Circuit. In *Ciardi*, the court, in addressing the defendants' claim that they

satisfied the jurisdictional amount by aggregating the potential statutory award of attorneys fees,

held that "Massachusetts law does not give the defendants an escape from the effect of the anti-

aggregation rule." *Id.* at *2. As the Court noted, "aggregation is permissible only when class members have a `common and undivided interest' in the claim." *Id.* at *1 n.1. *See Snyder, supra* 394 U.S. at 335-342; *Hairston, supra* 814 F. Supp. at 181; *Bassett, supra* 818 F. Supp. at 1465-68; *Averdick, supra* 803 F. Supp. at 43-44.

In *Ferris v. General Dynamics Corp.*, 645 F. Supp. 1354 (D.R.I. 1986), while the court noted that there are some circumstances in which the amount in controversy should be determined from the defendant's viewpoint, it was adamant that the defendant's viewpoint cannot properly be used in class actions. 645 F. Supp. at 1362-63.[3] *See also Hairston,* 814 F. Supp. at 182 (rejecting the use of defendant's viewpoint approach in class action); *Grotzke v. Kurz,* 887 F. Supp. 53, 56 (D.R.I. 1995); *Melnick v. Microsoft Corp.,* Civil No. 99-377-P-H (D. Me., March 8, 2000) (Hornby, J.) (copy of remand order attached as Exhibit E).

In this case, the actual damages to each individual plaintiff will be quite small. *See, e.g. Melnick*, at Page 2 (even if damages for the two named plaintiffs exceeded the amounts they paid for their personal computers, the "additional incremental economic benefit" of injunctive relief would not be on the order of $75,000). Plaintiff is a consumer who was overcharged for consumer products containing DRAM. While the actual amount of damages is speculative at best, it is obvious that the award to the Plaintiff will not approach $75,000. One of the factors this Court relied upon in declining to adopt the "defendant's view" approach in *Hairston*, 814 F. Supp. at 182, was that the damages were "speculative and unpredictable."

---

[3] Courts in other jurisdictions also disallow the use of the defendant's viewpoint in class actions. *See Snow v. Ford Motor Co.*, 561 F.2d 787, 790 (9th Cir. 1977); *Lonnquist v. J.C. Penny Co.*, 421 F.2d 597, 599 (10th Cir. 1970); *National Organization for Women v. Mutual of Omaha Insurance Co.*, 612 F. Supp.100, 107-08 (D.D.C. 1985); *Brechbill v. Diners Club, Inc.*, 80 F.R.D. 486, 488 (W.D.Pa. 1978); *Barton Chemical Corp. v. Avis Rent A Car System, Inc.*, 402 F. Supp. 1195, 1197-98 (N.D.Ill. 1975).

A decision by another Massachusetts District Court rejected similar arguments advanced by Defendants here, and followed the plaintiff's perspective viewpoint. *Williams v. America Online, Inc.*, Civil Action No. 00-10694-GAO (D.Mass. August 10, 2000). In *Williams,* Judge O'Toole held that "the valuation of injunctive relief should be done from the perspective of the plaintiff and where there are multiple plaintiffs with individual claims, the rule of aggregation requires the valuation to be made individually for each plaintiff." *Id.* at Page 2. The Court also opined that attorneys' fees must be prorated across the membership of the class as required by the anti-aggregation principle. *Id.*

The District of Kansas addressed this argument in *Aetna U.S. Healthcare, Inc.*, as follows:

> [W]here class members have separate and distinct claims for injunctive relief, those claims may not be aggregated to meet the jurisdictional amount and "it would be improper to look to [defendants] total detriment" in determining the amount in controversy. *Id.* at 599 (citing *Snyder v. Harris,* 394 U.S. 332, 89 S.Ct. 1953, 22 L.Ed.2d 319 (1969). "The threshold question is aggregation, and it must be resolved affirmatively before total detriment can be considered." *Id.* at 599.

54 F. Supp.2d at 1051, *quoting Lonnquist v. J.C. Penney Co.*, 421 F.2d. 597, 599 (10th Cir.1970) In this action, aggregation is not appropriate because the disgorgement claim is based upon the individual overpayments made by Plaintiff and other class members in purchasing consumer products at higher prices than they would have paid but for Defendants' anti-competitive conduct. (Complaint, ¶ 92).

**D.    Subject Matter Jurisdiction Is The Threshold Issue**

In passing, Defendants argue that the interests of judicial economy weigh in support of removal because of a multidistrict action pending in the Northern District of California. (Notice

of Removal, ¶ 42).    However, Defendants neglect to account for the well-established principle that subject matter jurisdiction is a threshold issue that must be determined first, before the court takes any other action in the case.  "Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact..." *Steel Company v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) (internal quotation marks and citations omitted); *Danca*, 185 F.3d at 4. ("[a] threshold issue in this case, as in every case, is subject matter jurisdiction."). In a very recent decision, remanding a case to the Superior Court, Judge Lindsay cited this principle, noting, "[i]t is well settled that a federal court must determine any threshold issue of subject-matter jurisdiction **before conducting any further proceedings in an action pending before the court**." *Auerbach v. General Motors Corporation*, Civil Action No. 01-11723-RCL (D. Mass. July 10, 2003) (emphasis added, *citing Steel Company* and *Danca*).[4]

The foregoing principles should be applied here, where there are, to say the least, serious doubts regarding this Court's subject matter jurisdiction.

---

[4] Copy attached hereto as Exhibit F.

## CONCLUSION

For all of the foregoing reasons, Plaintiff's Motion to Remand this case to the Essex Superior Court Department should be ALLOWED.

Dated: May 7, 2004                    Respectfully submitted,


                                      /s/ Daniel D'Angelo
                                      David Pastor (BBO# 391000)
                                      Daniel D'Angelo (BBO# 630321)
                                      GILMAN AND PASTOR, LLP
                                      Stonehill Corporate Center
                                      999 Broadway, Suite 500
                                      Saugus, MA 01906
                                      Telephone: (781) 231-7850

                                      **Counsel for Plaintiff**